

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**
FILED
NOV 23 2009
Clerk, U.S. District Court
Eastern District of Tennessee
At Knoxville

| | |
|---|---|
| **ANSUR AMERICA INSURANCE COMPANY,** | No. 3:09-CV-512 |
| Plaintiff, | Varlan/Guyton |
| v. | |
| **BEN TESTERMAN CONSTRUCTION Co., Inc.** | |
| Defendant. | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Comes the Plaintiff, Ansur America Insurance Company (hereinafter "Ansur"), pursuant to <u>Tenn. Code Ann.</u> § 29-14-101 et. seq. and Rules 57, 17 (b)(3)(A) and 15 of the <u>Federal Rules of Civil Procedure</u>, and prays the Court declare the rights and obligations of the parties pursuant to a Commercial General Liability Policy issued by Ansur America Insurance Company to Ben Testerman Construction, Co., Inc. (hereinafter BTCC), Policy No.: CPP931443, which is the object of this litigation and is incorporated by reference herein, a certified copy of which is attached as *Exhibit A*. Plaintiff requests the Court to construe the policy, hear the facts, and declare the rights and obligations of the parties and further avers as follows:

## JURISDICTION AND VENUE

1. Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332 as there is complete diversity between the Plaintiff and the Defendant. The defendant was sued in the Chancery Court of Knox County for an amount in excess of $655,000. The defendant has made a claim for indemnification and duty to defend under the Commercial General Liability Policy issued by the plaintiff, Ansur America Insurance Company. The value of the right to indemnification and duty to defend under the policy, the right to which is the object of litigation in this declaratory action, is $1,000,000. Accordingly the amount in controversy far exceeds the threshold jurisdictional limit of $75,000.

2. Upon information and belief, the Defendant is subject to the personal jurisdiction of this Honorable Court. Jurisdiction is also proper under 28 U.S.C. § 2201 because Plaintiff seeks a declaration concerning rights and obligations under a policy of insurance delivered to Ben Testerman Construction Co. Inc., at the address of 104 Land Oak Road, Knoxville, Tennessee 37922 in the Knox County, and therefore venue is proper with this Honorable Court.

3. Venue is further proper in this district pursuant to 28 U.S.C. § 1391 (a) (1) because the events or omissions giving the rise to the claim occurred in this district, and the properties that are the subject of this action are situated in this district.

## PARTIES

4. Plaintiff Ansur America Insurance Company was incorporated pursuant to the laws of the State of Michigan with its principle place of business at 1 Mutual Avenue, Frankenmuth, MI 48787-0001.

5. Defendant, Ben Testerman Construction Co. Inc., is a for profit Corporation formed under the laws of the State of Tennessee with its agent for service of process being Robert L. Crossley at 900 S Gay Street, Suite 2102, Knoxville, Tennessee 37902.

## FACTUAL ALLEGATIONS

6. A Suit was filed in Chancery Court of Knox County, No. 175699-3, which is attached as *Exhibit B* with exhibits and is incorporated by reference herein. This underlying suit alleges that BTCC is engaged in the business of construction of residential properties and buying and selling real estate; that Ben Testerman and Muffett Testerman, at times material, were officers, directors, and shareholders of BTTC; and that BTCC controls an entity known as the "Duncan Woods Homeowner Association" and requires through said "Association" that owners of homes within the Duncan Woods subdivision pay annual dues to it and invoices the property owners annually for said dues, which are legally designated for maintenance of the "common areas" of the Duncan Woods subdivision. [Underlying Complaint, ¶¶ 7, 8 and 9].

7. It is also alleged that BTCC has owned Lots 15 and 17 of the Duncan Woods subdivision since January of 2005. Further, that BTCC had completed construction of a house on Lot 17, which was listed for sale, and

had begun construction on a nearby lot, Lot 15. However said construction was interrupted and had ceased. [Underlying Complaint, ¶ 10].

8. The underlying plaintiffs, Martin B. Daniel and Melissa Daniel, entered into negotiations with BTCC in July 2007 concerning the purchase of Lot 17, a.k.a 1834 Duncan Woods Lane in the Duncan Woods subdivision. As a central part of the negotiations, the Daniels insisted that BTCC complete construction of Lot 15 to which BTCC agreed and promised to have said construction completed within twelve (12) months of closing. [Underlying Complaint, ¶ 11].

9. Pursuant to the Agreement, a provision referenced as *"the Lot 15 Provision"* was attached to the Agreement as an Exhibit and provided that *"Seller acknowledges that incomplete construction in the Duncan Woods subdivision constitutes a nuisance and diminishes surrounding property value. Seller's construction on Lot 15 is only temporarily interrupted and will be completed within nine (9) months from the date of closing on Lot 17."* However, the nine month deadline was later extended to twelve (12) months. [Underlying Complaint, ¶ 11].

10. On or about July 31, 2007, the Daniels entered into a "Purchase and Sale Agreement" with BTCC for the purchase of the property and improvements at 1834 Duncan Woods Lane, Lot 17, in the Duncan Woods subdivision. The Agreement incorporated the *Lot 15 Provision* and further provided that "In the event that any party hereto shall file suit for breach of enforcement of this Agreement (including suits filed after closing which are

based on or related to the Agreement), the prevailing party shall be entitled to recover all costs of enforcement, including attorney fees." The transaction was closed on October 12, 2007 and the Daniels tendered $655,000 to BTCC whereupon the property was transferred to the Daniels. [Underlying Complaint, ¶¶ 13 and 14].

11. The Complaint further alleges that Lot 15 is and remains an unsightly, incomplete construction on which there is exposed concrete block, gravel, rebar, and high foundation walls freely accessible to all who may enter or be attracted to it. No significant work has been done on the construction site since the Daniel's closing date. Further, that Lot 15 is a nuisance and substantially interferes with the enjoyment of owners of property within the Duncan Woods subdivision, including all underlying plaintiffs. The Complaint further alleges that Lot 15 has a substantial negative impact on the value of other properties within the Duncan Woods subdivision, including the properties owned and occupied by the Daniels. Also, that Lot 15 is in a dangerous condition, and its state of partial construction lures and attracts children onto it. Further, that it is foreseeable that said condition will harm children. Lot 15 is further alleged to be an attractive public nuisance. [Underlying Complaint, ¶¶ 16, 17 and 18].

12. The Complaint further alleges that the Declaration of Covenants and Restrictions for Duncan Woods apply to and are binding on all properties within the subdivision. Further that said Covenants prohibit doing anything on the properties that may be an annoyance or nuisance to the neighborhood

(Article XI); that owners shall keep construction sites free of debris and waste materials (Article X, Section (a); that at no time will any lot be allowed to go to waste or neglect or by storage of construction materials thereon (Article XV); and that fences or walls may not be constructed on any lot without approval by the architectural Review Committee (Article XIX).

13. The Complaint further alleges that the Covenants further provide that any owner of property in the Duncan woods subdivision may prosecute any proceeding at law or in equity against any person violating or attempting to violate any of the covenants or restrictions either prevent him from doing so or to recover damages or other dues for such violation (Article IV). Further, that any owner who successfully prosecutes an action pursuant to the Covenants shall be entitled to receive its reasonable attorney fees and costs associated with prosecution against the violating party. (Article XIII (c)) [Underlying Complaint ¶ 20].

14. The Daniels allege that they notified Ben Testerman that Lot 15 constitutes an annoyance and private nuisance to the plaintiffs; a public nuisance, and an attractive nuisance that endangers the safety of children; and a breach of the Agreement. Plaintiffs also allege that they have requested that BTCC honor its obligation and remedy the condition of Lot 15. However, BTCC has failed and refused to fulfill its obligations to plaintiffs and under the contract. Further that Ben Testerman made oral and written threats to Martin Daniels that if the Daniels attempt to enforce the contract related to Lot 15,

Ben Testerman will take intentional actions to impair the values of all properties in the Duncan Woods subdivision. [Underlying Complaint, ¶¶ 21, 22 and 23].

15. The Daniels allege that said aforementioned actions and failure and/or refusal to act constitute a breach of the July 31, 2007 Agreement making BTCC liable for compensatory damages and entitle the Daniels to rescission of the contract and a refund of their purchase price of $655,000 along with the expenses of improvements made to Lot 17 and the house thereon. [Underlying Complaint, ¶¶ 24, 25 and 29].

16. Plaintiffs, owners of property within the subject subdivision, aver that BTCC is bound by the applicable Declaration of Covenants, and said aforementioned actions and failure and/or refusal to act constitute a violation of the Declaration of Covenants and Restrictions of Duncan Woods subdivision and are negatively impacting the property values within said subdivision. More specifically, said plaintiffs allege that BTCC violated said Covenants by constructing fences and walls on Lot 15 without the approval of the Architectural Review Committee; allowed waste materials and debris to accumulate on Lot 15; and has allowed said Lot to go into waste and neglect. Further, that BTCC is contractually and legally obligated to act to remedy and correct said violations and to bring Lot 15 into compliance with the Covenants.

17. It is further alleged that the use and condition of Lot 15 is in breach of the Agreement between the Daniels and BTCC; is in violation of Covenants; is improper, unreasonable, and reckless; and is an annoyance,

inconvenience, discomfort and danger to plaintiffs, other property owners in the Duncan Woods subdivision, and to the public. Further, that said condition interferes with the reasonable use and enjoyment of plaintiffs' properties and other property owners in said subdivision, and is causing irreparable harm. In summary, plaintiffs allege said condition is a private and public nuisance causing plaintiffs to suffer special injury as a result. Further, that in order to abate this nuisance, BTCC must complete the structure on Lot 15 or by entirely removing it. [Underlying Complaint, ¶¶ 36 and 37].

18. Ansur issued Commercial General Liability Policy to Ben Testerman Construction, Co., Inc. Policy No.: CPP9314433 on January 24, 2008 with a policy term of December 30, 2007 through December 30, 2008 with a renewal policy term of December 30, 2008 through December 30, 2009.

19. Ansur avers that the Commercial General Liability (CGL) Policy provides no coverage for the losses and damages alleged to have been sustained by the underlying plaintiffs as a result of the acts and/or omissions of the defendant in violation and/or breach of the contractual agreement and/or restrictions and covenants as alleged in the underlying Complaint. Ansur has no obligation to defend or indemnify Ben Testerman Construction, Co., Inc. in this matter under said CGL Policy. Ansur pleads and relies upon all provisions, conditions and exclusions of the commercial general liability policy at issue including, but not limited to, the following:

# POLICY

## SECTION I COVERAGES

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply"..... .

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The bodily injury or property damage occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1 of Section II – Who Is An Insured and no "employee" authorized by you to give and receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" had occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period. ...

d. "Bodily injury" or property" damage will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim: ...; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**2. Exclusions**

This insurance does not apply to:

**a. Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily

injury" resulting from the use of reasonable force to protect persons or property.

    **b.    Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

    ***m.    Damage to Impaired Property or Property not Physically Injured***

*Damage to Impaired Property or Property not Physically Injured* arising out of:

    (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

    *(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.* (*Emphasis added*).

\*\*\*

\* \* \*

### SECTION V – DEFINITIONS

The following definitions provide further parameters for coverage in the context of this claim. Particularly:

    8.    "impaired property" means tangible property, other than "your product" or "your work" that cannot be used or is less useful because:

    a.    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b.    *You have failed to fulfill the terms of a contract or agreement*;

if such property can be restored to use by:

    a.    The repair, replacement, adjustment or removal of "your product" or "your work"; or

    b.    Your fulfilling the terms of the contract or agreement.

\* \* \*

13. **"Occurrence"** means an ***accident,*** including continuous or repeated exposure to substantially the same general harmful conditions. (*Emphasis added*)

* * *

17. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

* * *

**WHEREFORE**, Ansur America Insurance Company respectfully prays that service be had upon the Defendant, the Court declares the rights and obligations of the parties hereto, and Judgment be taken against the Defendant to include:

1. A determination that the allegations contained within the four corners of the underlying Complaint, that the insured failed to complete the construction of the structures on Lot 15 within one year from the plaintiffs' purchase of Lot 17 according to terms of the contract or agreement and in violation of the applicable covenants and restrictions resulted in a private nuisance and decreased property values to plaintiff's adjacent property and/or other lots in the subject subdivision, did not result in a covered *occurrence* or *accident* under the subject Policy or likewise trigger a duty to defend or indemnify;

2. A finding that based upon the defendant's acknowledged awareness of the alleged incomplete construction prior to the applicable policy

period; the acknowledgment that the alleged offense would result in reduced property values and a private nuisance; and the continuing nature of the offense as well as defendant's failure to provide Ansur with notice at the onset of the alleged occurrence or offense, the alleged occurrence or damages pre-existed the policy period and were intentional and/or expected and not covered under the Policy;

3. A determination that the damages alleged in the underlying Complaint arise from *"Damage to Impaired Property or Property not Physically Injured"* and/or "Contractual Liability" or failure to abide by the terms of the contract and/or covenants and restrictions and are thus expressly excluded in the policy at hand; and

4. That costs of this cause be taxed against the Defendant with an awarding to the Plaintiff herein any other such relief as the Court deems just and proper.

Respectfully submitted,

**LEITNER, WILLIAMS, DOOLEY & NAPOLITAN, PLLC**

BY: /s/ Carmen Y. Ware
THOMAS A. WILLIAMS, (**TN BPR # 001688**)
CARMEN Y. WARE, (**TN BPR # 023951**)
*Attorneys for Plaintiff,*
  *Ansur America Insurance Company*
801 Broad Street, Third Floor
Chattanooga, TN 37402-2621
(423) 265-0214 (P)
(423) 267-6625 (F)